FILED
JAMES J. VILT JR., CLERK
U.S. DISTRICT COURT
W/D OF KENTUCKY

Date: Aug 04, 2022

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) |
| v. | ) No. 3:22CR-86-DJH<br>)<br>) 18 U.S.C. § 371<br>) |
| KELLY GOODLETT, | )<br>) |
| Defendant. | ) |

# INFORMATION

The United States charges that:

### Introduction

At times material to this Information:

1.  Breonna Taylor was a 26-year-old woman from Louisville, Kentucky, who, as of March 2020, had lived for several years at 3003 Springfield Drive, Apartment 4.

2.  The Louisville Metro Police Department (LMPD) in late 2019 had formed a unit called Place-Based Investigations (PBI). In early 2020, PBI was investigating alleged narcotics trafficking that was centered in the West End area of Louisville, approximately 10 miles away from Taylor's home.

3.  **KELLY GOODLETT** was a detective in the PBI unit who, as of early 2020, had worked for LMPD for approximately 8 years.

4.  KYLE MEANY was an LMPD sergeant who supervised the PBI unit. He had been employed as an LMPD officer since 2013.

5.  JOSHUA JAYNES was a detective in the PBI unit who, as of early 2020, had worked at LMPD for approximately 15 years.

6. On March 12, 2020, PBI obtained warrants to search five properties. These included four properties in Louisville's West End neighborhood that were allegedly used in drug trafficking, as well as Taylor's home at 3003 Springfield Drive, Apartment 4 (the Springfield Drive warrant). The primary target of the investigation was J.G., a man who had been previously arrested for committing drug offenses.

7. On March 13, 2020, at approximately 12:45 a.m., LMPD officers who had not been involved in drafting the search warrant and who were unaware of the false statements in it executed the warrant at Taylor's home. When those officers broke down the door to the apartment, a guest in Taylor's home (K.W.), believing that intruders were breaking in, immediately fired one shot with a handgun that he lawfully possessed, hitting the first officer at the door. Two LMPD officers instantly fired a total of 22 shots into the apartment, and one of those shots hit Breonna Taylor in the chest. A third officer moved from the doorway to the side of the apartment and fired ten more shots through a window and a sliding glass door, both of which were covered with blinds and curtains.

8. Taylor died from the wound to her chest.

Paragraphs 1 through 8 are hereby incorporated by reference into the count set forth below.

The United States further charges that:

## COUNT ONE
(*Conspiracy*)

Beginning not later than in or around January 2020, and continuing until in or around June 2022, in the Western District of Kentucky and elsewhere, **KELLY GOODLETT** knowingly and willfully conspired and agreed with JOSHUA JAYNES, and others known and unknown to the

United States, to commit offenses against the United States; specifically (1) to knowingly falsify a warrant affidavit for Breonna Taylor's home, in violation of 18 U.S.C. § 242; and (2) to knowingly engage in misleading conduct toward another person, with the intent to hinder, delay, and prevent the communication of information to a federal law enforcement officer and judge relating to the commission and possible commission of a federal offense, in violation of 18 U.S.C § 1512(b)(3).

### Manner, Means, and Object of the Conspiracy

1. One object of the conspiracy was to submit a falsified affidavit in order to obtain a warrant to search 3003 Springfield Drive despite lacking probable cause.

2. It was part of the manner and means of the conspiracy for **KELLY GOODLETT** and JOSHUA JAYNES to put false and misleading information in the Springfield Drive warrant affidavit.

3. Another object of the conspiracy was to cover up, after the shooting, the fact that the warrant had been based on information that was false, misleading, stale, and unsupported by probable cause.

4. It was part of the manner and means of the conspiracy for **KELLY GOODLETT** and JOSHUA JAYNES to call, text, and meet with each other to discuss the false information in the Springfield Drive warrant affidavit and to coordinate their false cover story in an attempt to escape responsibility for their roles in preparing the warrant affidavit that contained false information.

5. It was further part of the manner and means of the conspiracy for **KELLY GOODLETT** and JOSHUA JAYNES to make false and misleading statements during interviews with criminal investigators.

Overt Acts

In furtherance of the conspiracy, and to accomplish its objectives, **KELLY GOODLETT** and her conspirators committed the following overt acts, among others:

1. On or around March 10 or 11, 2020, JOSHUA JAYNES sent **KELLY GOODLETT** a draft of the Springfield Drive affidavit in which he claimed that he had "verified" from a Postal Inspector that J.G. was receiving packages at Taylor's address. **KELLY GOODLETT** knew this claim was false because JOSHUA JAYNES had previously told her that he had been told that there was no evidence of J.G. receiving packages at Springfield Drive. Despite knowing that this allegation was false, **KELLY GOODLETT** failed to change this statement or object to it.

2. On or around March 10 or 11, 2020, **KELLY GOODLETT** told JOSHUA JAYNES that the Springfield Drive warrant affidavit did not contain enough recent information connecting Taylor or her home to criminal activity; she then added a paragraph to the affidavit that she knew was misleading, which stated that detectives had "verified" from databases that, as of February 20, 2020, J.G. used 3003 Springfield Drive as his "current home address."

3. On or about May 17, 2020—after media outlets reported that a Postal Inspector had announced that J.G. had *not* received packages at Taylor's address as alleged in the Springfield Drive warrant affidavit—JOSHUA JAYNES texted **KELLY GOODLETT** that a criminal investigator wanted to meet with him the following day and arranged to meet with **KELLY GOODLETT** in JOSHUA JAYNES'S garage that night.

4. When JOSHUA JAYNES and **KELLY GOODLETT** met in the garage on the evening of May 17, 2020, JOSHUA JAYNES relayed to **KELLY GOODLETT** that they needed to

get on the same page because they could both go down for putting false information in the Springfield Drive warrant affidavit.

5. During the meeting in the garage, JOSHUA JAYNES and **KELLY GOODLETT** agreed to tell investigators a false story, claiming that Sgt. J.M. had told them in January 2020 that J.G. was receiving packages at Taylor's home.

6. On or about May 19, 2020, two days after the garage meeting, JOSHUA JAYNES falsely claimed to investigators with LMPD's Public Integrity Unit that, in January 2020, Sgt. J.M. had told him and **KELLY GOODLETT** "nonchalantly" that "your guy [J.G.] just gets Amazon or mail packages there [at Taylor's home]."

7. On or about August 12, 2020, **KELLY GOODLETT** falsely told investigators with the Kentucky Office of the Attorney General that, in January 2020, "[J.M.] in passing" had told **KELLY GOODLETT** and JOSHUA JAYNES that he "verified [J.G.] was getting packages there [at Taylor's home]."

8. On or about June 14, 2022, during an interview with agents with the Federal Bureau of Investigation, JOSHUA JAYNES falsely claimed that, in January 2020, Sgt. J.M. "made a nonchalant comment" that J.G. was getting "mail or Amazon packages" at Taylor's home. All in violation of Title 18, United States Code, Section 371.

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION


By: /s/ Michael J. Songer
MICHAEL J. SONGER
ANNA GOTFRYD
TRIAL ATTORNEYS
CIVIL RIGHTS DIVISION

ZACHARY DEMBO

UNITED STATES OF AMERICA v. KELLY GOODLETT

## P E N A L T I E S

Count 1:  NM 5 yrs./$ 250,000/both/NM 3 yrs. Supervised Release

## N O T I C E

**ANY PERSON CONVICTED OF AN OFFENSE AGAINST THE UNITED STATES SHALL BE SUBJECT TO SPECIAL ASSESSMENTS, FINES, RESTITUTION & COSTS.**

SPECIAL ASSESSMENTS

18 U.S.C. § 3013 requires that a special assessment shall be imposed for each count of a conviction of offenses committed after November 11, 1984, as follows:

| | | | |
|---|---|---|---|
| Misdemeanor: | $ 25 per count/individual | Felony: | $100 per count/individual |
| | $125 per count/other | | $400 per count/other |

FINES

In addition to any of the above assessments, you may also be sentenced to pay a fine. Such fine is due <u>immediately</u> unless the court issues an order requiring payment by a date certain or sets out an installment schedule.  You shall provide the United States Attorney's Office with a current mailing address for the entire period that any part of the fine remains unpaid, or you may be held in contempt of court.  18 U.S.C. § 3571, 3572, 3611, 3612

**Failure to pay fine as ordered may subject you to the following**:

1. **INTEREST** and **PENALTIES** as applicable by law according to last date of offense.

    <u>For offenses occurring after December 12, 1987:</u>

    No **INTEREST** will accrue on fines under $2,500.00.

    **INTEREST** will accrue according to the Federal Civil Post-Judgment Interest Rate in effect at the time of sentencing.  This rate changes monthly.  Interest accrues from the first business day following the two week period after the date a fine is imposed.

    **PENALTIES** of:

    10% of fine balance if payment more than 30 days late.

    15% of fine balance if payment more than 90 days late.

2. Recordation of a **LIEN** shall have the same force and effect as a tax lien.

3. Continuous **GARNISHMENT** may apply until your fine is paid.

18 U.S.C. §§ 3612, 3613

   If you **WILLFULLY** refuse to pay your fine, you shall be subject to an **ADDITIONAL FINE** of not more than the greater of $10,000 or twice the unpaid balance of the fine; or **IMPRISONMENT** for not more than 1 year or both.  18 U.S.C. § 3615

RESTITUTION

If you are convicted of an offense under Title 18, U.S.C., or under certain air piracy offenses, you may also be ordered to make restitution to any victim of the offense, in addition to, or in lieu of any other penalty authorized by law.  18 U.S.C. § 3663

APPEAL

If you appeal your conviction and the sentence to pay your fine is stayed pending appeal, the court shall require:

1. That you deposit the entire fine amount (or the amount due under an installment schedule during the time of your appeal) in an escrow account with the U.S. District Court Clerk, or

2. Give bond for payment thereof.

18 U.S.C. § 3572(g)

PAYMENTS

If you are ordered to make payments to the U.S. District Court Clerk's Office, certified checks or money orders should be made <u>payable to the Clerk, U.S. District Court</u> and delivered to the appropriate division office listed below:

| | |
|---|---|
| LOUISVILLE: | Clerk, U.S. District Court<br>106 Gene Snyder U.S. Courthouse<br>601 West Broadway<br>Louisville, KY  40202<br>502/625-3500 |
| BOWLING GREEN: | Clerk, U.S. District Court<br>120 Federal Building<br>241 East Main Street<br>Bowling Green, KY  42101<br>270/393-2500 |
| OWENSBORO: | Clerk, U.S. District Court<br>126 Federal Building<br>423 Frederica<br>Owensboro, KY  42301<br>270/689-4400 |
| PADUCAH: | Clerk, U.S. District Court<br>127 Federal Building<br>501 Broadway<br>Paducah, KY  42001<br>270/415-6400 |

If the court finds that you have the present ability to pay, an order may direct imprisonment until payment is made.

ASSISTANT UNITED STATES ATTORNEY
EASTERN DISTRICT OF KENTUCKY

ATTORNEYS FOR THE UNITED STATES, ACTING UNDER
AUTHORITY CONFERRED BY 28 U.S.C. § 515